UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
(Jacksonville Division)

**CASE NO:  3:22-cv-1269**

JAMES LIGHTFOOT

       Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

       Defendant.
_____/

## JAMES LIGHTFOOT'S COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiff, James Lightfoot, (hereinafter "Lightfoot"), by and through his undersigned counsel, sues the Defendant, State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"), and alleges:

### JURISDICTION AND VENUE

1. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) excluding costs, interest, and attorney's fees.

2. At all times material, Lightfoot was a citizen of the State of Florida.

3. At all times material, State Farm has been incorporated in the State of Illinois with its principal place of business in Bloomington, Illinois. State Farm, therefore, is a citizen of Illinois for purposes of diversity jurisdiction.

4. Venue is proper in the Middle District of Florida because the corporate defendant has sufficient contacts in said district, and because a substantial part of the events giving rise to the claim occurred in the district.

## GENERAL ALLEGATIONS

5. At all times material, Marilyn Hunt (hereinafter "Hunt") was the owner of a 1996 Chevrolet Suburban.

6. On or about February 17, 2011 (hereinafter referred to as the "date of loss"), Hunt negligently operated the 1996 Chevrolet Suburban in Duval County, Florida, causing a rear-end collision with a vehicle operated by Lightfoot.

7. As a result of the rear-end collision, Lightfoot was seriously injured.

8. On the date of loss, Hunt was insured against liability claims arising out of the operation and use of the 1996 Chevrolet Suburban under an automobile liability policy issued to her by State Farm bearing policy number 795 2649-C04-59 and having bodily injury liability limits of $50,000.00 per person and $100,000.00 per occurrence (hereinafter the "Policy"). Lightfoot is not in possession of the policy, but a copy is in State Farm's possession.

9. Lightfoot is a beneficiary of the Policy pursuant to *Thompson v. Commercial Union Ins. Co. of New York*, 250 So. 2d 259 (Fla. 1971).

10. State Farm was timely notified about the rear-end collision and Lightfoot's injury claim and at all material times had sufficient information about the injury claim of Lightfoot to justify a timely tender of the policy limits.

11. State Farm acknowledged coverage of the rear-end collision claim and did not raise any coverage defenses.

12. At all times material, State Farm knew or should have known that the injuries and damages suffered by Lightfoot presented a risk of excess exposure to State Farm's insured, Hunt, in that the value of the Lightfoot claim was worth well in excess of the bodily injury liability limits available to Hunt.

13. On or about July 12, 2011, State Farm received a pre-suit settlement demand package from a from Lightfoot offering to settle his claim and release Hunt in exchange for the payment of the per person bodily injury liability limits of $50,000. The demand package enclosed medical records from Lightfoot's physician and a proposed release. At that time, State Farm was already in possession of cervical and lumbar MRI reports and work excuse slips which Lightfoot had previously provided.

14. On or about November 7, 2011, Lightfoot again sent a letter to State Farm offering to settle his claim and release Hunt in exchange for the per person bodily injury liability limits. Enclosed with that letter was a second copy of the no-work slips, a lost vacation time verification from Lightfoot's employer, medical narrative reports and records from two treating physicians, medical bills, and a limited 45-day medical authorization signed by Lightfoot.

15. Despite being provided with various records and information regarding Lightfoot's injuries, State Farm did not accept the offer to settle his claim.

16. Instead, State Farm presented a counteroffer. By letter dated December 14, 2011, State Farm offered Lightfoot $15,000.00 to settle his claim.

17. On the same date of the counteroffer, Lightfoot rejected State Farm's counteroffer of $15,000.00 and renewed his offer to settle the claim against Marilyn Hunt for the $50,000.00 per person bodily injury liability limits.

18. Again, State Farm did not accept the offer to settle Lightfoot's claim.

19. State Farm had multiple opportunities to settle Lightfoot's claim against Marilyn Hunt arising out of the February 17, 2011 collision within the available bodily injury liability insurance coverage.

20. State Farm did not settle Lightfoot's claim for the Policy limits, even thought it had previously confirmed the Policy coverage for the losses and Hunt was more likely liable for the damages arising out of the collision.

21. As a result of the failure to settle, Lightfoot filed a lawsuit against Hunt styled *James Lightfoot v. Marilyn Roseanne Hunt*, bearing Case No.: 16-2012-CA-001281 in the Fourth Judicial Circuit, in and for Duval County, Florida (hereinafter the "underlying tort case") arising out of the collision of February 17, 2011.

22. The underlying tort case proceeded to trial on August 12, 2019.

23. The trial resulted in a jury verdict on August 19, 2019, in favor of Lightfoot and against Hunt in the amount of $11,622,673.73. A copy of the Verdict is attached hereto as Exhibit A.

24. On September 19, 2019, a Final Judgment was entered against Hunt in favor of Lightfoot in the sum of $11,502,337.16, plus statutory interest. A copy of the Final Judgment is attached hereto as Exhibit B. That Final Judgment was affirmed on appeal by the First District Court of Appeal.

25. On July 8, 2020, a Final Judgment on Attorney's Fees and Taxable Costs was entered against Hunt and State Farm in the sum of $1,415,254.55, plus statutory interest. A copy of the Final Judgment on Attorney's Fees and Taxable Costs is attached hereto as Exhibit C. The

First District Court of Appeal reversed the fee award, and that ruling is currently being appealed to the Florida Supreme Court.

26. State Farm has refused to pay any damages beyond the amount of its Policy limits and taxable costs.

27. At all times material, Lightfoot cooperated with State Farm.

28. State Farm knew or should have known that Lightfoot's bodily injury liability claim presented certain financial exposure to Hunt above the policy limits of $50,000.00. Accordingly, State Farm should have timely tendered the $50,000.00 available bodily injury liability limits to settle the Lightfoot claim. Doing so would have been proper pursuant to settled Florida bad faith law. *See Snowden v. Lumbermens Mutual Casualty*, 358 F. Supp. 2d 1125 (N.D. Fla. 2003) (as the amount by which an anticipated claim exceeds policy limit increases, the amount of time before a prudent insurer would be expected to tender policy limits decreases); *Powell v. Prudential & Casualty Ins. Co.*, 584 So. 2d 12 (Fla. 3d DCA 1991) (where liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurance company can be in bad faith for failing to tender its policy limits even before a settlement demand from the plaintiff); *See also Harvey v. GEICO General Ins. Co.*, 259 So. 3d 1 (Fla. 2018) (setting forth insurer's good faith duties).

29. All claims, defenses, or issues raised in the underlying tort case are finally resolved and are *res judicata* between the parties and their privies.

## COUNT I

### Bad Faith of Defendant, State Farm Mutual Automobile Insurance Company

30. Lightfoot adopts and re-alleges the allegations contained in Paragraphs 1 through 29 above as if fully set forth herein.

31. State Farm, pursuant to the insurance contract and Florida law, owed good faith duties to Marilyn Hunt, including but not limited to the following:

   a. Act fairly and honestly and with due regard for the interests of Hunt;

   b. Fully investigate Lightfoot's claim and evaluate it fairly to appreciate and act on the medical information available to State Farm for the benefit of Hunt;

   c. Settle Lightfoot's claim against Hunt when, under all the circumstances, it could have and should have done so had it acted fairly and honestly and with due regard for the interests of Hunt;

   d. Adopt and implement standards for proper investigation and handling of liability claims, commensurate with the needs of the types of claims that could be reasonably anticipated to be made against insureds;

   e. Properly train adjusters and claims personnel for the types of claims over which they would be assigned and provide support to assist its adjusters to fairly and honestly evaluate claims;

   f. Affirmatively initiate and follow through with settlement negotiations as soon as it knew or should have known that liability was reasonably clear and there was a possibility that Hunt was exposed to damages in excess of the policy limits;

g. Communicate with Hunt candidly and with integrity to keep her informed of the claim resolution process;

h. Exercise reasonable diligence and a level of care commensurate with the undertaking, in every aspect of handling the underlying claims against Hunt;

i. Fully, honestly, and promptly advising Hunt concerning any settlement opportunities, of the likelihood of a recovery in excess of the policy limits, of the steps she might take to avoid the same, and of any procedures which were available to lessen the financial impact of the underlying claims upon her; and

j. Handle the bodily injury claims in accordance with the applicable Florida insurance laws, statutes, governmental and insurance industry regulations that establish the obligations and standard of conduct for liability insurance companies handling claims as well as State Farm's own policies for handling claims.

32. The foregoing duties are fiduciary and non-delegable.

33. State Farm, through its agents, employees, and representatives, breached its non-delegable fiduciary duties of good faith to Hunt by, including but not limited to:

a. Failing to act fairly and honestly and with due regard for the interests of Hunt;

b. Failing to fully investigate Lightfoot's claim and evaluate it fairly to appreciate and act on the medical information available to State Farm for the benefit of Hunt;

c. Failing to settle Lightfoot's claim against Hunt when, under all the circumstances, it could have and should have done so had it acted fairly and honestly and with due regard for the interests of Hunt;

d. Failing to adopt and implement standards for proper investigation and handling of liability claims, commensurate with the needs of the types of claims that could be reasonably anticipated to be made against insureds;

e. Failing to properly train adjusters and claims personnel for the types of claims over which they would be assigned and provide support to assist its adjusters to fairly and honestly evaluate claims;

f. Failing to affirmatively initiate and follow through with settlement negotiations as soon as it knew or should have known that liability was reasonably clear and there was a possibility that Hunt was exposed to damages in excess of the policy limits;

g. Failing to communicate with Hunt candidly and with integrity to keep her informed of the claim resolution process;

h. Failing to exercise reasonable diligence and a level of care commensurate with the undertaking, in every aspect of handling the underlying claims against Hunt;

i. Failing to fully, honestly, and promptly advising Hunt concerning any settlement opportunities, of the likelihood of a recovery in excess of the policy limits, of the steps she might take to avoid the same, and of any procedures which were available to lessen the financial impact of the underlying claims upon her; and

j. Failing to handle the bodily injury claims in accordance with the applicable Florida insurance laws, statutes, governmental and insurance industry regulations that establish the obligations and standard of conduct for liability insurance companies handling claims as well as State Farm's own policies for handling claims.

34. As a result of the above breaches of its duties of good faith and its failure to settle the Lightfoot claim within policy limits when it could and should have done so, Lightfoot has sustained damages, including but not limited to the amount of the above-described Final Judgments.

35. All conditions precedent to Lightfoot's rights to bring this action have occurred or have been excused.

WHEREFORE, Plaintiff, James Lightfoot, demands judgment against the Defendant, State Farm Mutual Automobile Insurance Company, for damages, including the amount of the Final Judgment, interest, attorneys' fees and costs for the underlying action and this action, and further demands trial by jury.

Respectfully submitted this 16th day of November, 2022

/s/ *Fred A. Cunningham (trial counsel)*
Fred A. Cunningham, Esq. (775487)
Matthew T. Christ, Esq. (0119106)
Domnick Cunningham & Whalen
2401 PGA Boulevard, Suite 140
Palm Beach Gardens, Florida 33410
Phone: (561) 625-6260
Fax:    (561) 625-6269
EService@dcwlaw.com;
Fred@dcwlaw.com;  MTC@dcwlaw.com;
TLebel@dcwlaw.com
*Counsel for James Lightfoot*